# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:12CV774-MU

| | | |
|---|---|---|
| DEBORAH BOYD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAROLYN W. CLOVIN[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9)

filed May 23, 2013 and Defendant's Motion for Summary Judgment (Doc. No. 11) filed July 15,

2013.

## FACTUAL BACKGROUND

Plaintiff, Deborah Boyd, seeks judicial review of an unfavorable administrative decision

on her application for disability benefits. Plaintiff filed an application for a period of disability

and Social Security Disability Insurance benefits on August 17, 1998, alleging that she became

disabled on August 13, 1998.[2] (Tr. 24, 234-238.) Plaintiff's application was denied, and a

hearing was held on February 9, 2000. (Tr. 772-810.) On March 28, 2000, ALJ Wieselthier

issued a decision denying Plaintiff benefits. (Tr. 59-75.) The Appeals Council remanded the

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin will be substituted for Michael J. Astrue as the Defendant in this matter. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is necessary.

[2] In order to qualify for Disability Insurance benefits, an individual must become disabled during the period under which she is insured by the program. 20 C.F.R. § 404.131. The last date a person meets these requirements is the date last insured, or "DLI." Plaintiff's DLI is December 31, 2000, thus Plaintiff must establish disability on or before December 31, 2000 to qualify for the benefits. (Tr. 25, 164-66.)

claim (Tr. 148-150.), and a second hearing was held on May 6, 2002. (Tr. 811-853.) On

November 1, 2002, ALJ Wieselthier again denied Plaintiff's claim for benefits. (Tr. 90-107.)

The Appeals Council remanded the claim and a third hearing was held on February 12, 2008.

(Tr. 854-900). On April 24, 2008, ALJ Strauss denied Plaintiff's claim for benefits. This

decision was remanded by the Appeals Council on July 30, 2010. (Tr. 24). On January 27,

2011, a hearing was held before ALJ Sage in Charlotte, North Carolina. (Tr. 901-919.) On

March 1, 2011, the ALJ denied Plaintiff's claims for benefits. (Tr. 21-39.) Specifically, the ALJ

found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date

and her date last insured. (Tr. 27.) The ALJ also found the Plaintiff suffered from osteoarthritis

of the knees, obesity, and diabetes which were severe impairments within the meaning of the

regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 27,

30.) The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to

perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (Tr. 30.) The ALJ found that:

> Plaintiff can perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with
> the ability to alternate between sitting and standing as needed to compensate for
> discomfort; no climbing ladders or scaffolds or work at unprotected heights or
> around hazardous equipment; occasional but no repetitive balancing, climbing
> stairs, stooping, kneeling, crouching, or crawling; and a clean environment with
> no extremes of temperature or humidity.

(Tr. 30.) The ALJ found that Plaintiff's medically determinable impairments could reasonably

be expected to cause some of the symptoms alleged. (Tr. 31.) The ALJ further found that

Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms

was not entirely credible, and that those symptoms would not preclude sedentary work as

---

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite
his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of
[the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work
activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

described in the assessed RFC. (Tr. 31.) Based upon this RFC, the ALJ then found that Plaintiff could not perform her past relevant work as a railroad token clerk. (Tr. 37.)

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("V.E.") identified sedentary jobs (information clerk, charge account clerk, and telephone quotation clerk) that Plaintiff could perform. (Tr. 38.) The V.E. also stated that over 12,000 of these jobs existed in North Carolina. (Tr. 38.) The ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that she was not disabled during the relevant period. (Tr. 39.)

Plaintiff filed the present action on November 16, 2012. She assigns error to the ALJ's assessment of her RFC, and specifically to the ALJ's evaluation of the medical opinion evidence and her assessment of her credibility and subjective complaints of pain. (Doc. No. 10, Pl. Br. at 13-14, 19.) The Appeals Council denied Plaintiff's request for review (Tr. 10-13.), making the hearing the final decision of the Commissioner. 20 C.F.R. §§ 404.955, 404.981. Plaintiff has exhausted her available administrative remedies and the case is now ripe for review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), *quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome − so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

**DISCUSSION**

The question before the ALJ was whether Plaintiff became disabled at any time before the expiration of her insured status on December 31, 2000.[4]

Plaintiff argues that the ALJ erred in assessing her RFC. The ALJ's RFC determination is supported by substantial evidence including Plaintiff's medical records and treatment history. The ALJ found that parts of the doctors' opinions were not consistent with the evidence in the record, including their own treatment notes (Tr. 33-38.), and thus, the ALJ was not required to adopt their opinions in his RFC finding. *See* 20 C.F.R. §§404.1527(c)(3), (c)(4); *Mastro*, 270 F.3d at 178. Furthermore, pursuant to Acquiescence Ruling 00-1(4) and *Albright v. Commissioner of Social Security*, 174 F.3d 473 (4th Cir. 1999), the ALJ also had to consider and weigh the RFC finding from August 1997, and the ALJ found the previous finding that Plaintiff could perform sedentary work was entitled to some weight. (Tr. 35.) The ALJ based his RFC finding on the opinions of Plaintiff's treating psychiatrists, as well as parts of Dr. Diwan's, Dr. Salom's, and Dr. Goldman's opinions that were consistent with the evidence in the record. (Tr. 33-35.) To the extent that Plaintiff is arguing that the ALJ has to cite to persuasive contradictory authority to support his evaluations of the doctors' opinions, that standard has been superseded by regulation. *Henderson v. Astrue*, No. 3:11-cv-195-GCM, 2012 WL 1569575, at *5 (W.D.N.C. Mar. 22, 2012) *aff'd* 2012 WL 1569571 (W.D.N.C. May 3, 2012); *Vallejo v. Astrue*, No. 3:10-cv-445-GCM, 2011 WL 4595259, at *4-5 (W.D.N.C. Aug. 4, 2011) *aff'd* 2011 WL 4597348 (W.D.N.C. Sept. 30, 2011).

---

[4] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> *Pass v. Chater*, 65 F. 3d 1200, 1203 (4th Cir. 1995).

Furthermore, in September 1998, Dr. Seo found that Plaintiff was not as limited as the other doctors' opinions suggested as Plaintiff could sit without much difficulty, stand without interruption for thirty minutes, walk a few blocks, and lift/carry approximately twenty pounds. (Tr. 399.)  Dr. Seo also found that Plaintiff had normal range of motion in her hip and ankle joints, she only had mild swelling and deformity in her knees with mild crepitus in her right knee, and her leg strength was rated 5/5 bilaterally.  (Tr. 398-99.)  Moreover, Dr. Salom noted on December 16, 1999, Plaintiff had no complaints on physical examination, she was not in any distress, and she had not been seen for six months.  (Tr. 494.)

Plaintiff further alleges that the ALJ improperly evaluated the medical opinions from her treating and examining physicians.  (Doc. No. 10, Pl. Br. At 13.)  The ALJ is to evaluate the opinion of a treating physician to determine whether that opinion is entitled to controlling weight under the regulations.  *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  In order for a physician's opinion to be given controlling weight: (1) the opinion must be from a treating source; (2) the opinion must be a medical opinion concerning the nature and severity of Plaintiff's impairment; (3) the opinion must be well-supported by medically acceptable "clinical and laboratory diagnostic techniques;" and (4) the opinion must be consistent with other "substantive evidence" in the administrative record.  Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2.

If the opinion is not entitled to controlling weight, or is from an examining physician, the ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and

the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6); *see Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

The ALJ properly evaluated the medical opinions from Drs. Diwan, Salom, and Goldman as required by the regulations and SSR 96-2p. (Tr. 32-35.) The ALJ found that the opinions were not consistent with the physicians' own treatment notes or other evidence in the record, both valid bases for giving an opinion limited weight. *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4); SSR 96-2p, 1996 WL 374188, at \*2; *Mastro*, 270 F.3d at 178 (holding that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.") (quoting *Craig*, 76 F.3d at 590.)

For example, the ALJ concluded that the restrictions in Dr. Diwan and Dr. Salom's questionnaires were entitled to little weight because they were inconsistent with other evidence in the record, including their treatment notes. (Tr. at 33.) In support of this finding, the ALJ noted that while the checklist questionnaires listed Plaintiff's symptoms, and stated that her impairments were reasonably consistent with the symptoms and limitations described; the assessments did not state how frequently her symptoms occurred, or how the listed symptoms resulted in functional restrictions, such as an inability to sit or walk more than a specific period. (Tr. 33.) The ALJ also noted that there was no evidence that either doctor performed or referred Plaintiff for a functional capacity test. (Tr. at 33.)

In addition, the ALJ noted that though Dr. Diwan's treatment notes included clinical findings of tenderness and limitation of motion, and in May 2000 he concluded that she was completely disabled from work, the only treatment he prescribed Plaintiff was anti-inflammatory

7

medication and physical therapy exercises. (Tr. 34.) While the Plaintiff had chronic knee pain, her treatment records revealed that her pain was alleviated by this anti-inflammatory medication. (Tr. 34.) The ALJ also noted that Dr. Diwan did not refer Plaintiff for additional surgery or more aggressive treatment until several years after the period in question and there was no medical evidence that substantiated the limitations in the doctor's questionnaire. (Tr. 34.) Dr. Diwan never ordered or cautioned Plaintiff that she should limit the time that she stood or sat to the extent set forth in the questionnaires. (Tr. 34.)

Furthermore, the ALJ determined that Dr. Diwan's 2006 Lower Extremity Questionnaire was not entitled to any weight because it was written five years after the period in question, and no additional treatment records were submitted with the assessment, nor was there evidence of any functional limitations due to hip arthritis during the period in question. (Tr. 34.) Moreover, the ALJ noted that Dr. Diwan's 2007 narrative report was not entitled to any weight because, while the doctor stated that he treated Plaintiff from 1994 to 2006 for constant pain in her hips and knees and that she was completely disabled since April 1998 from arthritis in her knees and hips, there was no evidence of constant hip pain or any functional limitations due to hip arthritis during the period in question. (Tr. 34.) Lastly, the ALJ noted that though Dr. Diwan referred to his 2006 questionnaire in his 2007 narrative report, the limitations given were based on Plaintiff's hip and knee problems, and the doctor's treatment notes did not support those restrictions. (Tr. 34.)

The ALJ also noted that the only clinical finding that Dr. Salom listed on his questionnaire were laboratory results that revealed poor control of Plaintiff's diabetes in December 1998, and intermediate control in May 1999. (Tr. 33-34.) The ALJ noted that the doctor stated in December 1999, that Plaintiff had not been seen in six months, she had no

complaints, her physical examination was normal, she was counseled for compliance with her

diabetes regimen, and she was advised to return in three months for lab tests. (Tr. 34.) The ALJ

added that there was no medical evidence that substantiated the limitations in the doctor's

questionnaire and that Dr. Salom never ordered or cautioned Plaintiff that she should limit the

time that she stood or sat to the extent set forth in the questionnaire. (Tr. 34.)

The ALJ also considered Dr. Goldman's opinion, but concluded that his assessment was

entitled to little weight since he examined Plaintiff seven years after the period in question. (Tr.

34.) However, the ALJ did give substantial weight to the doctor's opinion regarding Plaintiff's

2002 MRI, which revealed that she had advanced arthritic changes, and his assessment of the

current severity of her medical condition. (Tr. 34.) The ALJ noted that the doctor's narrative

report and multiple impairment questionnaire indicated that he first examined Plaintiff in

December 2007, yet he imposed restrictions as of 1998. (Tr. 34.) The ALJ also noted that Dr.

Goldman stated that he received some of Plaintiff's medical evidence for the period in question,

but his opinion was clearly based on the progressive worsening of her condition since the period

at issue. (Tr. 34.) Specifically, the ALJ noted that the doctor's narrative report discussed

Plaintiff's right knee surgery in 2004, as well as her median nerve problems that did not develop

until 2007. (Tr. 34.) The ALJ added that Dr. Goldman's opinion included limitations from

Plaintiff's carpal tunnel syndrome, however, the medical evidence established that she did not

begin treatment for that condition until 2007, and she reported at that time that her symptoms had

only been in existence for a few months. (Tr. 34-35.)

Plaintiff also argues that the ALJ must consult a medical expert if he had any questions

about the inconsistencies between the doctors' opinions and the evidence in the record.

However, additional development of the record should not be undertaken for the sole purpose of

determining whether a treating physician's opinion is entitled to controlling weight if the record

is otherwise adequately developed. SSR 96-2p, 1996 WL 374188, at *4. Moreover, the decision

to call a medical expert to testify at the hearing remains within the discretion of the

Commissioner, and the failure to do so may not provide the basis for vacating her decision.

*Johnson v. Astrue*, No. 5:07-cv-15-RJC, 2008 WL 7526174, at *7 (W.D.N.C. May 16, 2008)

*aff'd* 320 Fed. Appx. 193 (4th Cir. 2009) (quoting *Rodriguez Pagan v. Secretary of Health and

Human Services*, 819 F.2d 1, 5 (1st Cir. 1987)).

Plaintiff further alleges that by crediting the doctors' treatment notes, the ALJ violated

SSR 96-8p, as he failed to provide any narrative discussion of the evidence that supported his

RFC finding. However, the ALJ's determination is supported by substantial evidence. The ALJ

did not err by crediting the treatment notes over the doctors' opinions, as the doctors'

assessments of Plaintiff's functioning were not consistent with the objective evidence in the

record. (Tr. 33-35.); 20 C.F.R. §§ 404.1527(c)(3), (c)(4); *Mastro*, 270 F.3d at 178. Furthermore,

when the ALJ set forth his RFC determination, he considered Plaintiff's subjective reports, found

that they were not credible and supplied his rationale for that finding (Tr. 31-32.); evaluated the

opinion evidence (Tr. at 32-35.) and explained the basis for the restrictions on her ability to

stoop, balance, stand, walk, manipulate, and communicate. (Tr. at 35-36.)

Plaintiff also contends that the ALJ improperly evaluated her subjective complaints.

Plaintiff argues that the ALJ's characterization of her treatment as conservative is inaccurate as

she underwent three knee surgeries. (Pl. Br. at 19.) Plaintiff also claims that the ALJ relied too

heavily on her activities of daily living to discredit her subjective complaints. (Pl. Br. at 20-21.)

The courts have determined that it is the duty of the ALJ to make credibility decisions.

*Craig*, 76 F.3d at 589. In determining whether the claimant's statements are credible, the ALJ

must first establish that she meets the threshold requirement of suffering from an underlying medical impairment, which could reasonably be expected to cause the pain alleged. SSR 96-7p, 1996 WL 374186, at *2. If the claimant is found to have met this threshold standard, then the ALJ will consider other evidence of pain, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side-effects of any medication; (5) treatment, other than medication received; (6) any means use to relieve pain; and (7) other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3). The ALJ is not required to discuss each factor enumerated in 20 C.F.R. §§ 404.1529(c) and 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The ALJ noted that Plaintiff had pain and limited motion in her knees when she was examined by Dr. Seo in September 1998, four months after her right knee surgery; however, the doctor also observed that she had normal muscle strength in her legs with no signs of atrophy. (Tr. 31.) Although Plaintiff reported to Dr. Seo that she had swelling in both knees with limited range of motion, she had difficulty standing and walking, her activities were limited, and most of the time she stayed home reading or receiving physical therapy, the ALJ noted that her subsequent treatment records establish that she was generally treated with Naprosyn, a non-steroidal anti-inflammatory medication, and her treating physicians did not recommend more aggressive treatment such as narcotic medication or a referral to a pain clinic. (Tr. 31.)

The ALJ further determined that Plaintiff's allegations of disabling pain were inconsistent with her activities of daily living. (Tr. 32.) The ALJ noted that the evidence

11

revealed that Plaintiff was able to care for her children and grandchildren during the period at issue. (Tr. 32.) The ALJ then noted that Dr. Browne stated that the Plaintiff did well in group therapy and she was able to shop and cook, although she was limited due to physical problems with her legs. (Tr. 32.) The ALJ also noted that Plaintiff told Dr. Salom in July 2001 that she was stressed because she was caring for her granddaughter. (Tr. 32.) The ALJ further noted that Plaintiff stated in her Disability Report and supplemental form that she watched television, listened to the radio, read, visited with friends, and paid her bills herself. (Tr. 32.) The ALJ additionally discussed Plaintiff's complaints regarding her ability to stand, walk, bend, stoop, balance, and engage in manipulation and communication. (Tr. 32.)

The ALJ properly evaluated Plaintiff's subjective complaints. The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; her statements, including all of her written subjective statements concerning the intensity, persistence, and limiting effects of her symptoms, were not credible to the extent that they were inconsistent with an RFC for a range of sedentary work and medical evidence, including her own statements to her treating and examining physicians and her activities of daily living. (Tr. 30-31.) Furthermore, the ALJ's characterization of Plaintiff's treatment as conservative is accurate, and an ALJ can find that the claimant lacked credibility when the alleged level of pain is not commensurate with the treatment sought out or received. *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994); *see also Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (holding that the fact that Plaintiff used a limited amount of medication or failed to sustain consistent treatment can constitute specific evidence to support a credibility finding that his symptoms are not disabling). Plaintiff relies on her three knee surgeries as evidence that her

treatment was not conservative, however, two of Plaintiff's knee surgeries occurred prior to her alleged onset date and the last surgery occurred after her date last insured. (Tr. 24-25.)

In addition, the ALJ's consideration of Plaintiff's daily activities was proper as it is required by the regulations and SSR 96-7p. 20 C.F.R. § 404.1529(c)(3)(i); SSR 96-7p, 1996 WL 374186, at *3. The Fourth Circuit has held that a claimant's daily activities, such as performing home exercises, visiting relatives, cooking, and doing laundry, were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical and mental work abilities. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (pattern of claimant's daily activity, which included cooking, washing dishes, and generally taking care of house, suggested that he was not disabled from working); *Rogers v. Barnhart*, 204 F.Supp.2d 885, 894 (W.D.N.C. 2002) (evidence of plaintiff's daily activities supported ALJ's negative credibility finding despite plaintiff's claim that such activities were performed with assistance from others).

## CONCLUSION

The final decision of the Commissioner conforms to the applicable law and is supported by substantial evidence. **THEREFORE, IT IS HERBEY ORDERED** that the Commissioner's decision is **AFFIRMED**. Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**. Defendant's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**.

**SO ORDERED.**

Signed: July 30, 2013

Graham C. Mullen
United States District Judge